## Jesse J. Duncan *v.* The State.

1. MALICIOUS MISCHIEF—VERDICT—ACQUITTAL.—The indictment charges that the accused "with force and arms," at the county aforesaid, a certain hog, of the personal property, goods and chattels of Tobe Clay, then and there being found, unlawfully, willfully and maliciously, and out of wanton cruelty, did kill, maim and wound, contrary to the form of the statute," etc. The jury found a verdict in these words: "We, the jury, find the accused guilty of the willful and unlawful killing of the hog, but not out of a spirit of mischief, revenge, or wanton cruelty. *Held:* That this verdict was an acquittal of the accused of the charge in the indictment

2. SECOND VERDICT—INSTRUCTIONS.—The bill of exceptions states: "The court here instructed the jury upon the law applicable to the case, without being requested so to do, and ordered them to retire and find a verdict." The special verdict on the facts took the case out of the statutory definition of the offense, and it was error to instruct the jury on the law and to order them to find a second verdict.

3. STATUTORY DEFINITION OF THE OFFENSE.—The Code defines two distinct attributes or conditions of malicious mischief, within one or the other of which the facts must bring a case to warrant conviction, viz: That the injury was done "maliciously, either out of a spirit of revenge or wanton cruelty," or that it was done "mischievously." Revised Code of 1871, section 2708.

Error to the circuit court of Washington county.   Hon. C. C. SHACKLEFORD, Judge.

The opinion of the court contains a full statement of the facts in the case.

*W. T. Deason* and *Nugent & Yerger,* for plaintiff in error:

1. The errors complained of in this case are manifestly well taken. The motion to quash the indictment should have been sustained, if for no other purpose than to promote that reasonable certainty which should always attend the pleadings in a criminal case. The charge against the plaintiff in error is, that he *unlawfully, willfully and maliciously, and out of a spirit of wanton cruelty, did kill, maim and wound* a hog belonging to Tobe Clay. The malicious killing of the hog, out of a spirit of wanton cruelty, is not the crime, nor is the trespass attendant upon the unlawful killing, nor yet the mischievous killing. Norris' case, 4 George, 373; 13 Hill, 263; 42 Miss., 328; 44 Miss., 317.

2. If we are mistaken in this, the motion in arrest of judgment ought to have been sustained, especially as under the instructions of the court, the jury were directed to find a verdict of guilty, if they believed, from the evidence, that the plaintiff in error either *willfully or maliciously* killed the hog. The jury seemed to have had a better appreciation of the law than the court, for they failed to find a verdict of guilty, as charged, but did find a verdict that the accused was guilty of the " unlawful killing of the hog; the willful or unlawful killing of the hog was not a crime at all; at most it was but a trespass, not indictable under the statute.

The verdict of the jury was not, therefore, a verdict of guilty at all, and the motion in arrest of judgment was well taken in point of law. Jones' case, 11 S. & M., 315 ; Corey's case, 8 S. & M., 573 ; Frank's case, 10 George, 705.

3. The motion for a new trial, in any event, should have been sustained. The indictment was fatally defective. The vedict of the jury was not that of guilty. The evidence was not sufficient to sustain the charge, and the instructions given for the State were evidently improper.

If the indictment be held substantially good, as charging the killing of a hog, it was certainly wrong to instruct the jury that the willful killing of Tobe Clay's hog would subject the plaintiff in error to the penalty demanded by the statute for a mischievous killing. Beddle's case, MSS. Op.

*J. S. Morris*, attorney-general :

1. The addition of the words " and out of a spirit of wanton cruelty," in charging the offense, does not constitute duplicity sufficient to vitiate the indictment. If an indictment describe one offense and then add such words as are in part sufficient to describe another, it is not, therefore, double. To be so, it must set out each of the offenses in adequate terms. These superfluous words, therefore, must be treated as surplusage. Bishop's Criminal Proceedure, §

194, notes 2. This disposes of the chief grounds for the motion in arrest of judgment.

2. As to the other ground of error in giving and receiving instructions, being properly no part of the record, cannot afford a predicate for the motion. 1 Bish. Cr. P., 850, 851; 25 Miss., 383; 32 ib., 400–433.

3. The verdict, if not a literal response to the indictment, was sufficient to authorize the court in pronouncing judgment. See Bish. Cr. Law and Pr.

Tarbell, J., delivered the opinion of the court:

At the October term, 1871, of the Washington county circuit court, the grand jurors of that county presented a bill of indictment against the plaintiff in error, in the following terms: " That Jesse J. Duncan, late of the county aforesaid, laborer, on the 1st day of October, in the year of our Lord 1871, with force and arms, at the county aforesaid, a certain hog, of the value of $20.00, of the personal property, goods and chattels of Tobe Clay, then and there being found, unlawfully, willfully, and mischievously, and out of a spirit of wanton cruelty, did kill, maim, and wound, contrary to the form of the statute in such cases made and provided," etc. The cause came on to be heard at the February term, 1872. There was a motion to quash the indictment:

1. Because it contained two distinct offenses.

2. Because the indictment was not in the language of the statute.

This motion was overruled, and the trial proceeded.

The hog was shot as it was leaving the cornfield of the accused, where it had been doing damage to crops. It appeared that the hogs of Tobe Clay had, for a year or so, been so often in the corn of Duncan, that he had several times notified Clay to take care of them, or he would shoot them. There was also evidence to show that Duncan had expressed a willingness to pay for the hog, but there was neither payment nor tender.

The following instruction was given for the State:

"If the jury believe, from the evidence, that Jesse J. Duncan willfully or mischievously, out of a spirit of wanton cruelty, did kill, maim and wound a hog, the property of Tobe Clay, as charged in the indictment, they must find him guilty as charged, unless they believe, from the evidence, that he has paid or tendered to the said Clay full compensation for the injury inflicted."

For the accused, the following instructions were asked:

1. "To warrant conviction, every material allegation in the indictment must be proven; and unless the jury believe, from the evidence, that the shooting was willfully, unlawfully and mischievously done, or was out of a spirit of revenge or wanton cruelty, they must acquit." This was modified, and given as follows: "To warrant conviction, every material allegation in the indictment must be proven; and unless the jury believe, from the evidence, that the shooting was willfully, unlawfully or mischievously done, or was out of a spirit of revenge, or wanton cruelty, they must acquit."

2. "The defendant is entitled to the benefit of every reasonable doubt arising in the minds of the jury from the evidence." This was modified, and given as follows: "The accused is entitled to the benefit of every reasonable doubt arising in the minds of the jury from the evidence; but if the killing of the hog is established by the evidence, then the defendant must prove, beyond a reasonable supposition, excuse for such killing, before they can acquit."

3. "The jury are instructed that they may take all the circumstances attendant upon the shooting, which have been given in evidence, in forming their verdict." This was given as requested.

The jury returned the following verdict; "We, the jury, find the accused guilty of the willful and unlawful killing of the hog, but not out of a spirit of mischief, revenge or wanton cruelty."

It is stated in the bill of exceptions, that " the court here instructed the jury upon the law applicable to the case without being requested so to do, and ordered them to retire and find a verdict." To this action of the court in giving instructions to the jury without request, the accused excepted.

A second verdict was returned in these words : " We, the jury, find the accused guilty of the unlawful killing of the hog, as charged in the indictment."

Thereupon a new trial was asked : 1st. Because the jury found contrary to the evidence ; 2d. The verdict is contrary to the instructions; 3d. It was error to instruct the jury without the consent of the defendant.

A motion in arrest was also made on the grounds: 1st. That the court erred in instructing the jury without the consent of the defendant; and 2d. That the verdict of the jury was informal, contrary to law, and the instructions of the court.

These motions were taken under advisement, and at a subsequent term, were overruled, when the following entry was made: " It is ordered by the court that the defendant be fined in the sum of $75.00, and that he pay the costs of this prosecution, and that he stand committed until such fine and costs are paid." Hence a writ of error, based on overruling the several motions to quash the indictment, in arrest of judgment, and for a new trial.

As this case presents practical questions of general importance, the action of the court below is somewhat fully presented, with a view to the comments which seem to be necessary. The statute upon which this prosecution is based reads as follows : " Any person who shall maliciously, either out of a spirit of revenge, or wanton cruelty, or who shall mischievously kill, maim or wound, or injure any horse, mare, gelding, mule, sheep, cattle, hog, dog, poultry, or other live stock, or cause any person to do the same, shall be fined in any sum not less than fifty, nor more than $300.00, or be imprisoned for any term not exceeding six months, or by

both such fine and imprisonment; but the penalty in this section mentioned shall not apply to any person who may injure animals found in the act of trespassing within his enclosure, and who has paid or tendered to the owner of the animal, full compensation for the injury inflicted." Code, § 2708.

This is the provision of the Code of 1857, p. 605, art. 201, except the paragraph, that the penalty "shall not apply to any person who may injure animals found in the act of trespassing within his enclosure, and who has paid or tendered to the owner of the animal full compensation for the injury inflicted," which is considered matter of defense, the concomitants of malicious mischief remaining as defined by this court in Crealy v. The State, Op. Book A., 55 ; Biddle v. The State, Op. Book C., 183 ; Tillman v. The State, ib., 185.

It will be understood, that the references and quotations which follow, for another purpose, are qualified by the rule in this State, that in prosecutions under our code for malicious mischief, it is not necessary to charge or to prove "malice, ill-will, or resentment towards the property or its owner or possessor." Crealy's case, MSS. Op.

In State v. Simpson, 2 Hawks, L. and Eq., 460, it was well said, "that malicious mischief, in most of its forms, has been legislated upon in England, for the purpose of annexing a severer punishment to it than the law allowed in misdemeanor. The number of these statutes has so overlaid the common law offense, that it is difficult to trace any distinct account of it, and it is the best in the commentaries." As an interesting historical fact, it is worthy of repetition, that, "Upwards of eighteen hundred sections, it is estimated, of acts, running from Henry VIII, to George III, repealed or otherwise, were created for the especial purpose of providing against malicious mischief;" and it is added, that, "as the statutory penalty was both more specific, and more certain than that of the common law offense, the books, in relation to this class of offenses, give but few examples of common law

indictments." Wharton's Am. C. L., vol. 2, § 2062, p. 564. And the same author says of malicious mischief, that, "in its general application it may be defined to be any malicious or michievous injury, either to the right of another, or to those of the public in general. Ib.

Bouvier, (Law Dictionary,) defining this term, says, the "expression is applied to the wanton or reckless destruction of property, or the willful perpetration of injury to the person."

An indictment charging that, the defendant "unlawfully, wickedly, maliciously or mischievously, did set fire to, burn and consume, one hundred barrels of tar," etc., was sustained in State v. Simpson, *supra.*

In the case last cited, it is declared to be the "policy of the law, to protect property from those modes of destruction, against which all means of precaution and human prudence, are unavailing."

Discussing the rules respecting injuries to private property, Blackstone, (vol. 4. p. 254,) says: "Malicious mischief or damage is the next species of injury to private property, which the law considers as a public crime. This is such as is done, not *animo furandi*, or with an intent of gaining by another's loss, which is some, though a weak excuse; but either out of a spirit of wanton cruelty or diabolical revenge, in which it bears a near relation to the crime of arson; for as that affects the habitation, so this affects the other property of individuals; and, therefore, any damage arising from this mischievious disposition, though only a trespass at common law, is now, by a multitude of statutes, made penal in the highest degree."

"Mischievously," in State v. Jackson, 12 Iredell, 329, is said to be the generic term, designating the crime of malicious mischief. The word "mischieviously" being omitted from the indictment, in that case, and the charge of malice not being sufficiently set out, the description of the offense, was held to be incomplete.

The defendant, in State v. Landreth, Car. L. R., 331, was indicted for malicious mischief, in stabbing with a knife a mare, the property of one Young, and the jury found a special verdict, in which it is stated, that the defendant took the mare from his cornfield, where she was damaging his growing corn, to a secret part of the county, where he inflicted the wound, with a view of preventing a repetition of the injury.

The court say: " We do not think that the facts found in this case, bring the offense within the common law motive of malicious mischief, that seems to be confined to those cases, where the act is done in a spirit of wanton malignity, without provocation or excuse, and under circumstances which bespeak a mind prompt and disposed to the commission of mischief. * * * The conduct of the defendant was certainly highly reprehensible and barbarous, yet it was prompted by the sudden resentment of an injury, which is calculated, in no slight degree, to awaken passion; and their is a difference which every one must feel, between an act committed under such circumstances, and one where the party goes off his own land in pursuit of an animal which had done him no injury, for the sake of exercising cruelty, or perpetrating wanton mischief."

It was held in Mosely v. State, 28 Geo., 190, that, " to constitute the crime of malicious mischief under our (their) code, it is not necessary to prove actual ill-will or resentment owards the owner or possessor of the property; but if the act be done under circumstances which bespeak a mind prompt and disposed to the commission of mischief, or, in the language of the court, (the court below,) wantonly, and recklessly, it it sufficient."

Wright v. The State, 30 Georgia R., 325, was an indictment for malicious mischief, in shooting the mule of one Baker. The facts are indicated in the opinion of the court, wherein it is said: " We think the proposed evidence of the mule's thievish and unmanageable character was improperly

rejected. It was material, by way of support to the other evidence, which showed that Wright's motive in shooting the mule was a desire to protect his crop, and not either ill-will to the owner, or cruelty to the mule. The whole evidence against Wright was his own admission that he had shot the mule. This admission was coupled with a statement that he had shot him to keep him out of his corn field, and that the mule *was in his field* when he shot him. Now, the truth of this statement, that the mule was in his field, was most material to his defense, and the fact that the mule had a proclivity for being in such places, and was hard to be kept out of them, supported the probability of the statement. If the mule really was in his field, as he asserted, the fact very powerfully supported his further assertion that his motive in shooting, was the protection of his crop. The question to be tried was not whether he was *justified* in shooting the mule, but whether his motive in shooting was *malicious*. The question of justification would be the issue in an action of damages against him, but on this indictment the issue was malice or no malice. If he had shot from the motive of protecting his crop, and not from either ill-will to the owner or cruelty to the animal, his motive was not *malicious*, whether it was justifiable or not, and his act was not malicious mischief."

In view of these authorities, and of the code, and adjudications of our own State, the following observations are deduced:

1. The Code defines two distinct attributes, conditions, or definitions, of malicious mischief, within one or the other of which the facts must bring a case to warrant prosecution, viz.: that the injury was done " maliciously, either out of a spirit of revenge or wanton cruelty;" or, that it was done mischievously," the latter, according to the authorities, being the generic term designating the crime in question. Referring to the indictment in the case at bar, it will be observed that it does not follow the Code in its definition of the offense charged, but avers that the accused did " unlawfully,

willfully, and mischievously, *and out of a spirit of wanton cruelty*," kill the hog of Tobe Clay. The action of the court, however, in overruling the motion to quash the indictment may be now sustained by treating the italicised words as surplusage.

2. Tested by this analysis of the Code, the instructions of the court are found to be subject to criticism, and erroneous. The instruction for the State presented to the jury the alternative proposition, that if they believed the accused either willfully or mischievously killed the hog of Tobe Clay, they must convict. Under this charge of the court, the jury could acquit the accused of "mischievously" killing the hog, but might convict him of "willfully" committing the act; though the "willful" killing would not constitute the offense of malicious mischief.

The first instruction asked for the defendant.was so modified as to present three alternative propositions, viz.: "That the shooting was willfully, unlawfully, *or* mischievously done; *or* was out of a spirit of revenge or wanton cruelty." This was clearly error, as the willful and unlawful killing would not bring the case within the statute.

3. The second instruction asked by the defendant was so modified as to present the proposition to the jury that, "if the killing of the hog is established by the evidence, then the prisoner must prove, beyond a reasonable supposition, excuse for such killing before they can acquit." There was more proven, and there was more to be "established by the evidence," to the satisfaction of the jury, than the mere killing. The question to be determined was not the mere act of killing, but was the act done "maliciously, either out of a spirit of revenge, or wanton cruelty;" or was it done "mischievously?" Finding the killing to fall within either definition of the offense as provided by the Code, the crime would be complete; but the Code declared that "the penalty * * *" shall not apply to any person who may injure animals found in the act of trespassing within his

enclosure, and who has paid or tendered  *  *  *  full compensation for the injury inflicted." As to the excuse for killing, that is a question for the jury. In the case at bar, if the jury believed, from the evidence, that the killing was not done " maliciously, either out of a spirit of revenge or wanton cruelty," nor " mischievously," then the crime was incomplete, and the jury should, in such a case, acquit. The motive, upon the facts, was the question to be determined. Notwithstanding the killing was done while the stock was doing damage within the enclosure of the defendant, the jury, upon a state of facts, might, nevertheless, believe it was done " maliciously," either out of a spirit of revenge or wanton cruelty, or " mischievously," and so should convict in either case. According to these views, the instructions failed to present either a logical or legal view of the case, and the jury were without proper guides in their deliberations. The Code, § 2708, under which this prosecution was instituted, is clear, simple and easy of application.

4. If correct in the views thus far presented, the verdict first rendered was an acquittal of the accused, of the offense charged in the indictment. That verdict was in these words: " We the jury find the accused guilty of the willful and unlawful killing of the hog, but not out of a spirit of mischief, revenge or wanton cruelty." The " willful and unlawful" killing was an act of trespass only, and not malicious mischief. The accused was, therefore, found guilty of a trespass, merely. Of the essential ingredients of the crime charged he was found not guilty, by the very words of the verdict. In other words, the verdict is, guilty of the willful and unlawful killing, and not guilty of killing the hog out of a spirit of mischief, revenge or wanton cruelty.

5. The instructions of the court upon the return of this verdict are not given, but, whatever they were, they were given without the consent, and subject to the objection and exception of the defendant. Under these instructions, and in obedience to the instructions of the court, the jury retired to consider another verdict.

In this State it is forbidden to charge the jury without request, and this is not only the policy of our State, but is the subject of positive enactment. Code, § 643; Code of 1857, p. 504, art. 161. It would be more satisfactory if these instructions were contained in the record, but it is not important, as the jury had acquitted the accused, and it was improper to send them out a second time.

Even the second verdict, returned in obedience to the unauthorized instructions of the court, though greatly changed from the first, is not a verdict of guilty of malicious mischief but of an "unlawful killing" only, which are simply other words for the commission of a trespass. Evidently the jury did not believe, and were unwilling to find the defendant guilty of the offense of malicious mischief,

6. The Code, § 2708, furnishes a clearly defined and simple guide to the prosecution of this offense, whether for the indictment, proof · or instructions in this, that the statute declares malicious mischief to consist, first, "in maliciously, either out of a spirit of revenge or wanton cruelty;" or second, "in maliciously, killing, maiming, wounding or injuring the animals, or personal property therein enumerated."

It may be added, that for trespasses by stock, the statute affords means of redress. Code, c. 23, art. 3, p. 413. And, also, as bearing upon the general subject, that § 1922 of the Code, authorizes the confinement of stock "habitually addicted to fence breaking," and that § 1924, allows "double damages" to the owner of stock injured by one whose fence is "not a lawful one." See further, 2 East P. C., 1072; 37 Ala., 457; 19 Ills., 80.

Judgment reversed and accused discharged.