JAMES, J.,
dissenting:
¶ 27. I disagree with the majority’s conclusion that the State failed to meet its burden of proof. Because I find that there was sufficient evidence to support the conviction, I respectfully dissent.
FACTS AND PROCEDURAL HISTORY
¶ 28. I recite the facts consistent with the proceedings below. Shotts began a dating relationship with Amanda Winkler in September 2010. At the time, Shotts was employed at Chateau La Pooch, a dog-grooming and boarding establishment operated by Shotts’s family and located in Madison, Mississippi. On April 7, 2011, Winkler dropped her dog, Chloe, off at Chateau La Pooch to spend the day with Shotts while she was at work. Shotts was the only employee working at Chateau La Pooch that day. While in Shotts’s care, Chloe suffered first- and second-degree burns, purportedly from scalding bathwater.
¶ 29. On November 10, 2011, Shotts entered a plea of nolo contendere to the charge of animal cruelty in Madison County Municipal Court. Shotts was found guilty and sentenced to ninety days in jail *564 and a fine of $1,000. Shotts was also ordered to pay court costs of $329 and restitution to the victim. Shotts appealed to the county court and on May 7, 2011, the county court, sitting without a jury, heard the de novo appeal.
¶ 80. At trial, Winkler testified that she received a telephone call from Shotts at 5 p.m., informing her that Chloe had been burned while Shotts was giving the dog a bath. When Winkler arrived at Chateau La Pooch, Chloe was in a kennel and was visibly shaken. Winkler stated that Chloe’s back was red and blistered and that swaths of her fur were missing. Winkler took Chloe to Randall Veterinary Clinic, where she was treated by Dr. Gil Green for first- and second-degree burns. Winkler testified that Chloe’s injuries required her to stay at the veterinary clinic for one week and required an additional two weeks of at-home treatment. Over Shotts’s objection, Winkler also testified to two subsequent incidents involving Shotts and Chloe. The first incident involved Shotts placing Chloe atop a bookshelf as a joke. The second incident involved Chioe’s death on July 18, 2011. According to Winkler, she returned home from work to find Chloe unresponsive in her kennel. Winkler took Chloe to the emergency veterinary clinic where Chloe died. According to Winkler’s testimony, Shotts told her that he was playing with Chloe and his dog, a Labrador Retriever, at the same time and that his dog was apparently playing too rough.
¶ 31. Dr. Green testified that on April 7, 2011, he treated Chloe for first- and second-degree burns. According to Dr. Green, Chloe’s burns extended from her shoulder blades to the small of her back, including burns to her flank area. Chloe also suffered from corneal burns to her eyes. In total, Dr. Green estimated that the burns covered between fifty and sixty percent of Chloe’s body.
¶ 32. Shotts testified that he gave Chloe a bath around 4:30. Shotts stated that although he checked the temperature of the water, he “heard [Chloe] squeal ... [and] realized the water was pretty hot.” Shotts then adjusted the temperature and continued to bath the dog. According to Shotts, he was not aware of Chloe’s injuries until he began to dry her and fur began to come out.
¶ 33. Shotts was found guilty of animal cruelty, first offense. Shotts filed a motion for a new trial or, in the alternative, a motion for a judgment notwithstanding the verdict (JNOV), which the trial court denied. Shotts appealed to the Circuit Court of Madison County, which affirmed.
WHETHER THE CONVICTION WAS SUPPORTED BY SUFFICIENT EVIDENCE
¶ 34. I disagree with the majority’s conclusions that the trial court applied an improper legal standard and that the conviction was not supported by sufficient evidence.
¶ 35. “In reviewing the findings of a trial judge sitting without a jury, [this Court] will reverse only where the findings of the trial judge are manifestly erroneous.” Nix v. State, 763 So.2d 896, 899 (¶ 6) (Miss.Ct.App.2000). When sitting as the trier of fact in a bench trial, the trial judge “has sole authority to determine the credibility of a witness[.]” Id. (citing Reed v. State, 749 So.2d 179, 181 (¶ 3) (Miss.Ct.App.1999)). Furthermore,
our scope of review is limited to the same examination as that of the trial court in reviewing motions for [a] directed verdict and JNOV; that is, if the facts point in favor of the defendant to the extent that reasonable jurors could not have found the defendant guilty be *565 yond a reasonable doubt, viewing all facts in the light most favorable to the State, then the trial court must grant the motion.
Id. Accordingly, this Court “may reverse only where, with respect to one or more of the elements of the offense charged, the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty.” Id. However, there are no statutory elements listed in the code section for an injury done mischievously or maliciously. Mississippi Code Annotated section 97-41-16(1) (Rev. 2006), which basically prohibited malicious or mischievous injury to dogs or cats, was held to be constitutional in that it gave proper notice of the offenses prohibiting cruelty to animals. See Hill v. State, 853 So.2d 100, 104 (¶ 14) (Miss.2003).
¶ 36. The affidavit charging Shotts was executed by Pamela Winkler, Amanda Winkler’s mother. The affidavit, which is imperfectly worded, states in part:
Personally appeared before me (Notary), PAMELA WINKLER[,] who makes oath on or about 7[th] day of April, 2011[.] SPENCER SHOTTS was in violation of Section 97-41-15 of the Mississippi Annotated 1972.
Count: 1
[Shotts] did willfully, unlawfully!,] and maliciously injure Chloe[,] a tea-cup dog, of Pamela G. Winkler on April 7, 2011[,] at Chateau La Pooeh[,] 118 Depot Drive Madison, M[S] 39110.
DOG[S] AND CATS ARE COVERED UNDER 97-41-16.
This in the MADISON, MS ... MUNICIPAL COURT in the State of MISSISSIPPI. Against the peace and dignity of the State of MISSISSIPPI and contrary to the Ordinances of said city in such cases made and provided, and in the good order and peace thereof.
The affidavit lists Count I under Mississippi Code Annotated section 97-41-15 (Rev. 2006), malicious or mischievous injury to livestock. Pursuant to section 97-41-15(3) the term “livestock” shall mean “horses, cattle, swine, sheep and other domestic animals produced for profit.”
¶ 37. After listing Count I, the affidavit proceeds to state that dogs and cats are covered under Mississippi Code Annotated section 97-41-16 (Rev. 2006). These two statutory sections carry different penalties, and it does not appear that the parties considered section 97-41-15 during the trial. Shotts is alleged to be in violation of section 97-41-16(1).
¶ 38. Shotts was convicted of animal cruelty, first offense, pursuant to Mississippi Code Annotated section 97-41-16(1) (Rev. 2006). It is undisputed that Shotts caused Chloe’s injuries. Testimony at trial established that Shotts was the only employee working at Chateau La Pooch that day. Further, Shotts testified that Chloe was burned while he was bathing her.
¶ 39. The majority concludes that the State failed to present sufficient evidence to establish that the injury was committed either maliciously or mischievously. Section 97-41-16(1), as written at the time of the incident, provided that “any person who shall maliciously, either out of revenge or wanton cruelty, or who shall mischievously kill, maim or wound, or injure any dog or cat ... shall be fined not more than One Thousand Dollars ($1,000) or be imprisoned not exceeding six (6) months.” Miss.Code Ann. § 97-41-16(1) (Rev. 2006). In finding Shotts guilty, the trial court stated: “[A]fter hearing the testimony, arguments of counsel, and reviewing the evidence that’s been submitted, the Court finds that the State has met its burden of proof beyond a reasonable doubt, that [Shotts] acted at the least mischievously by wounding a domestic dog.” Neverthe *566 less, the final judgment, entered on May 15, 2012, found that Shotts “is hereby found guilty of the offense of animal cruelty, kill or injure, first offense.”
¶ 40. Black’s Law Dictionary defines “mischief’ as “2. Injury or damage caused by a specific person or thing. 3. The act causing such injury or damage.” Black’s Law Dictionary 1088 (9th ed. 2009). Likewise, Webster’s defines “mischievous” as “1: maliciously or playfully annoying. 2. causing annoyance, harm, or trouble.... ” Random House Webster’s Unabridged Dictionary 1228 (2d ed. 2001). The word mischievous denotes malicious mischief in a criminal case, and it does not mean playfully annoying when speaking of a crime. See Duncan v. State, 49 Miss. 331, 337 (1873); Rembert v. State, 56 Miss. 280, 281-82 (1879). I find that sufficient evidence existed to find that Shotts mischievously injured the dog.
¶ 41. Dr. Green[9] testified that in his experience, he had never seen an animal sustain burns, to the degree of Chloe’s burns, caused by either water or hot air alone. He further testified that he had never seen a dog suffer these types of burns as a result of grooming. Dr. Green also testified that, on the day of the incident,'he observed Shotts in his clinic and did not notice any burns to Shotts’s hands, which he would expect in a case of an accidental burning due to hot water. Likewise, Shotts testified that, in his two years of experience working at Chateau La Pooch, no other dog had ever been injured during a bath. Winkler testified to two other incidents in which Shotts exhibited wanton and mischievous behavior towards Chloe. The first incident involved Shotts placing Chloe atop a book shelf as a joke. The second incident occurred on July 18, 2011, when Winkler returned home from work to find Chloe unresponsive in her kennel. Winkler took Chloe to the emergency clinic, where Chloe died. According to Winkler, Shotts told her that he had been playing with Chloe and his dog, a Labrador Retriever, and that the playing got too rough but he “didn’t know what happened to her.” However, according to Winkler, on a later occasion, Shotts told Winkler that he “threw [Chloe] against the wall and ... dresser.” As to the first incident, Shotts testified that “it was a stupid mistake, [a] dumb decision. I wasn’t thinking.” As to the July 18, 2011 incident, Shotts testified that “Chloe had gotten trampled” by his dog. Shotts denied ever stating that he threw Chloe against a dresser.
¶ 42. “Wanton” is defined as: “Unreasonably or maliciously risking harm while being utterly indifferent to the consequences.” Black’s Law Dictionary, at 1719-1720. One acting wantonly is “not trying to avoid [harm] and is indifferent to whether harm results.” Id. at 1720. Even though the trial court stated that Shotts acted “at least mischievously,” the pattern of conduct exhibited by Shotts shows a wanton disregard for Chloe’s safety. The extent of Chloe’s injuries, along with the other incidents, supports a conviction of malicious injury as alleged by the State.
¶ 43. Given the extent of the dog’s burns, covering fifty to sixty percent of its body; Dr. Green’s testimony that he had never seen a dog suffer burns as severe as Chloe’s burns due to bathwater accidently becoming too hot; and the evidence of Shotts’s wanton behavior toward the dog, I cannot say that the evidence is such that reasonable and fair-minded jurors could *567 only find Shotts not guilty of animal cruelty-
¶ 44. Therefore, I would affirm Shotts’s conviction. Accordingly, I respectfully dissent.
LEE, C.J., AND BARNES, J., JOIN THIS OPINION.

. The majority questions Dr. Green’s expertise; however, as noted above, when sitting as the trier of fact in a bench trial, the trial judge has sole authority to determine the credibility of a witness. See Nix, 763 So.2d at 899 (¶ 6). Therefore, such speculation is improper.